RITTER *v.* RITTER ET AL.

[No. 27,569. Filed January 27, 1942. Rehearing denied February 25, 1942.]

488

Robert L. Mellen, of Bedford, and Noble Hays, of Scottsburg, for appellant.

George N. Beamer, Attorney General, Walter O. Lewis, Deputy Attorney General, Robert C. Bulleit and Telford B. Orbison, both of New Albany, and Alfred Evens and Robert F. McCrea, both of Bloomington, for appellees.

SHAKE, C. J.—This is an appeal from a judgment abating an action brought by the appellant to vacate and set aside an order committing him to a state hospital for the insane and a judgment appointing a guardian for his person and estate. The present action was begun in the court where the former proceedings were had and the appellees were named as defendants therein. The appellee Anna Mae Ritter is the appellant's wife and guardian, Milligan is superintendent of the Madison State Hospital, and Amick and Hays were respectively the sheriff and clerk of Scott County.

It is alleged in the only paragraph of complaint remaining in the record that the appellees conspired to have the appellant committed as an insane person and to have his said wife appointed as his guardian for the unlawful purpose of depriving him of control of his property; that pursuant to said conspiracy the wife filed an application in the Scott Circuit Court falsely alleging that the appellant was insane; that the judge of said court forthwith entered an initial order of commitment against the appellant without notice or hear-

ing; that the sheriff seized and delivered the appellant to the superintendent of the Madison State Hospital, who, without any acceptance of the application for commitment, confined the appellant in said institution. It is also alleged that subsequently, and in furtherance of said conspiracy, the wife filed a complaint against the appellant in the same court charging him to be an habitual drunkard and incapable of caring for his property; that appellant had no notice of that proceeding but, notwithstanding, the court adjudged him to be of unsound mind and appointed his said wife as guardian of his person and estate.

The appellees Amick and Hays answered in general denial but Ritter and Milligan filed separate pleas in abatement. The appellee Ritter's amended plea alleged that the appellant was of unsound mind; that he was duly and regularly committed to the Madison State Hospital by the judge of the Scott Circuit Court; and that the appellant was under guardianship by the judgment of said court. It was further alleged that the appellant had no legal capacity to sue or maintain said action either as sole plaintiff or by next friend. Milligan's plea in abatement stated that he was not a party to the commitment or guardianship proceedings and had no interest therein. Demurrers to the pleas were overruled and issues formed thereon. It was stipulated for the purposes of the hearing that the appellant was of sound mind when his complaint was filed and that he had continued so to be. There was a request for a special finding of facts and conclusions of law. The court found only that at the time of the commencement of the action the plaintiff was and is "under guardianship as a person of unsound mind," and upon this finding concluded that the law was with the defendants

and that the action should abate. Judgment followed in due course.

The first proposition presented by this appeal is that the trial court erred in overruling the demurrer to the separate amended plea in abatement of the appellee Anna Mae Ritter, which was filed in her individual capacity and also as guardian. It seems quite clear that the theory of this plea was that the appellant having been adjudged of unsound mind and being under guardianship did not possess legal capacity to maintain his action. On this view of the case, whether the appellant was sane at the time of the commencement of the suit or when the plea in abatement was filed is of no consequence, since "the modern rule is that an insane person has a legal capacity to sue or be sued the same as a sane person, provided he has not been divested of the power to act for himself by having been adjudicated incompetent and having been placed under guardianship." 28 Am. Jur., Insane and Other Incompetent Persons, § 103, p. 735. The appellant's lack of capacity to sue, if such exists, arises out of the fact that he had been adjudged of unsound mind and that a guardian had been appointed for him, which appears on the face of his complaint.

Our code of civil procedure prescribes that "the defendant may demur to the complaint when it appears upon the face thereof . . . that the plaintiff has no legal capacity to sue. . . ." § 2-1007, Burns' 1933, § 111, Baldwin's 1934. A subsequent section of the code provides that "where any of the matters enumerated in . . . (§ 2-1007) do not appear upon the face of the complaint, the objection . . . may be taken by answer. If no such objection is taken, either by demurrer or answer, the defendant shall be deemed to have waived the same. . . ." § 2-1011,

Burns' 1933, § 115, Baldwin's 1934. The above sections must be read together and we cannot construe them to mean, as urged by the appellee Ritter, that when the lack of capacity appears in the complaint, the defect may be reached by demurrer or by answer in abatement. All matters in abatement that are made causes for demurrer must be treated as waived by failure to demur when the objection appears on the face of the complaint. Watson's Works Practice, Vol. I, § 564, p. 417. It follows that the trial court erred in overruling the appellant's demurrer to the separate amended plea in abatement of the appellee Anna Mae Ritter. The plea in abatement of the appellee Milligan amounted only to a disclaimer of any interest in the subject-matter of the action and it should be treated as such.

For error in overruling the appellant's demurrer to the separate amended plea in abatement of the appellee Ritter, the judgment must be reversed; but inasmuch as the mandate will authorize further proceedings we deem it proper to express our views upon the substantial question that may ultimately arise. This may be stated hypothetically as follows: May one who has been adjudged insane and who is under guardianship therefor maintain a direct action in his own name to set such judgment aside for fraud in its procurement on the part of his guardian? The appellee Ritter undertakes to invoke the general rule that the guardian is the only person who may maintain a suit on behalf of one under such disabilities. We quote from her brief: "Appellant's right of action has never been questioned, but his capacity to maintain the same in his own name is questioned under the rule announced in the cases of *Meharry* v. *Meharry* (1877), 59 Ind. 257; *Robeson* v. *Martin* (1883), 93 Ind. 420; and *Cuneo* v. *Bessoni* (1878), 63 Ind. 524."

The Meharry case, *supra,* arose under a complaint by a next friend which, in its original form, might have been regarded as one to set aside an adjudication of insanity and the appointment of a guardian on account of the fraud of the guardian, but the complaint was reduced by voluntary amendment to one for a new trial. The court held that the next friend did not have capacity to maintain such an action but unnecessarily observed that the complaint was bad before amendment. In the Robeson case, *supra,* the court branded the complaint as "somewhat incoherent" but concluded that it constituted an effort on the part of an insane ward to impeach sales of property made by his guardian. The Cuneo case, *supra,* is more nearly in point. It is authority for the rule that one who has been adjudged insane and for whom a guardian has been appointed may appeal in his own right and in his own name. The court said, "We know of no rule which prohibits her (the person adjudged insane) from personally contesting her alleged unsoundness of mind, so long as it is an open question."

The rule that the guardian of an insane person is the only party who may prosecute an action on behalf of the ward pertains to the adjective rather than the substantive side of the law. "There is a decided difference between capacity to sue and the right to maintain an action, . . . The two things are essentially different in their natures, and in their results; the right of action is of the substance, the capacity to sue is necessary only as against a dilatory objection." 47 C. J., Parties § 28, p. 20. Where, as here, it is charged that the judgment is void and that it was corruptly procured by the connivance of the guardian, it is unthinkable that the ward should be left without a remedy because he cannot look elsewhere for

relief than to the party who is responsible for his unhappy plight. Such a result would do violence to the fundamental principle of due process of law. When a man is deprived of his liberty and of the enjoyment of his property by the force of a void judgment, we perceive it to be the duty of a court of equity to provide him with a remedy, if one does not already exist. The maxim that, "Equity will not suffer a wrong to be without a remedy," is probably the most important principle addressed to the chancellor. Lord Coke once said: "The law wills that, in every case where a man is wronged and endangered, he shall have a remedy." 19 Am. Jur., Equity § 451, p. 311.

It may be conceded that, as a general proposition, the guardian of an insane person is the necessary plaintiff in any action on behalf of the ward; but this rule must be subject to the exception that, where the ward makes a direct attack on the judgment and charges that it is void for fraud in which the guardian participated, he must be permitted to maintain the suit in his own name. The effect of such a complaint is to say that there is no valid judgment and, of course, if this is true the plaintiff is under no legal disability.

The judgment is reversed with directions to sustain the appellant's demurrer to the amended plea in abatement of the appellee Anna Mae Ritter and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 38 N. E. (2d) 997.