Dennis E. **WALTERS** and Betty L. Walters, d/b/a Denny's Food Mart, Plaintiffs-Appellees,

v.

**MARATHON OIL COMPANY, An Ohio Corporation, Defendant-Appellant.**

No. 80–1362.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 14, 1981.

Decided March 9, 1981.

James A. McDermott, Barnes, Hickman, Pantzer & Boyd, Indianapolis, Ind., for defendant-appellant.

Hugh A. Thornburg, Indianapolis, Ind., for plaintiffs-appellees.

Before PELL and WOOD, Circuit Judges, and SPEARS, District Judge.*

SPEARS, District Judge.

This action arose as a result of the Iranian revolution and the uncertainty of oil supplies. Marathon Oil Company, the appellant, is engaged in the business of reselling and distributing petroleum products. The appellee, Dennis E. Walters, contacted appellant in late December, 1978, about the possibility of locating a combination food-store and service station on a vacant gasoline service station site in Indianapolis. Appellees (husband and wife) purchased the service station in February, 1979, and continued to make improvements upon it, based upon promises made, and the continuing negotiations with representatives from appellant. Paper work apparently proceeded normally, and appellees' proposal was delivered to appellant along with a three-party agreement, signed by appellees and Time Oil Company, the previous supplier to the service station site appellees had purchased. Before appellees' proposal was accepted by appellant, but after it was received at the office, appellant placed a moratorium on the consideration of new applications for dealerships and seller arrangements, and refused to sign the three-party agreement.

After a bench trial, the court found for appellees and against appellant on the theory of promissory estoppel. This finding has not been challenged. The two issues presented for review in this appeal pertain only to the award of damages in the form of lost profits, and the alleged failure of appellees to take reasonable steps to mitigate their damages. We affirm the judgment of the district court.

The appellant first argues that the trial court committed error by ignoring evidence that appellees failed to take reasonable steps to mitigate their damages. The record clearly reflects, however, the appellees contacted Shell Oil Company, Standard Oil of Indiana, and Texaco with respect to becoming a new supplier of their service station, after appellant notified them it would not provide them with gasoline. Appellee, Dennis E. Walters, testified that he had telephoned the president of Time Oil, to seek a supply, but his request was declined. Appellees did not contact appellant, but they could hardly have been expected to do so, considering the treatment appellant had already given them. There are ample facts in the record to support the finding of the trial court that appellees exercised the ordinary care of a person in the same circumstances to mitigate their damages. That finding, under the evidence, was not clearly erroneous. Furthermore, the trial court found that the plaintiffs "had no gasoline market experience and were not familiar with the marketing practices of gasoline companies." Thus, the fact that alternative suppliers may have existed if appellees had asserted legal rights, and complied with Department of Energy regulations, does not alone impose the duty to mitigate damages

---

* Of the Western District of Texas, sitting by designation.

by searching for additional sources, if appellees lacked the sophistication with which to conduct such a search.

The appellant next argues that the trial court's computation of damages is clearly erroneous and contrary to the law. The trial court found that appellees lost anticipated profits of six cents per gallon for the 370,000 gallons they were entitled to receive under their allocation for the first year's gasoline sales, totalling $22,200.00, and awarded this amount in damages. The appellant insists that since appellees succeeded at trial solely on a promissory estoppel theory, and the district court so found, loss of profits is not a proper measure of damages. It contends that appellees' damages should have been the amount of their expenditures in reliance on the promise, measured by the difference between their expenditures and the present value of the property. Using this measure of damages, appellees would have received no award, for the present value of the real estate and its improvements is slightly more than the amount expended by appellees in reliance upon the promise. As a consequence, the appellant says that because appellees can recoup all they spent in reliance on appellant's promise, they would be in the same position they would have been in had the promise not been made.

However, in reliance upon appellant's promise to supply gasoline supplies to them, appellees purchased the station, and invested their funds and their time. It is unreasonable to assume that they did not anticipate a return of profits from this investment of time and funds, but, in reliance upon appellant's promise, they had foregone the opportunity to make the investment elsewhere. As indicated, the record reflects that had appellant performed according to its promise, appellees would have received the anticipated net profit of $22,200.00. The findings of the trial court in this regard were fully supported by the evidence. For example, it was shown that the 1977/78 base period for this particular station was 375,450 gallons. The appellant's own exhibit reflected the same amount. The testimony of the previous owner showed that the location pumped 620,000 gallons in 1972,

and that he pumped 375,450 gallons in 1978. Furthermore, an expert witness testified that the site would pump 360,000 gallons a year. Appellant's own witness testified that all of its dealers received 100% of their base period allocation for the time in question. Thus, the trial court was not clearly erroneous in its finding that appellees would have sold 370,000 gallons of gasoline had appellant's promise been performed.

■ An equity court possesses some discretionary power to award damages in order to do complete justice. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Minnis v. International Union, United Automobile, Aerospace and Agricultural Workers of America, UAW*, 531 F.2d 850 (8th Cir. 1975). Furthermore, since it is the historic purpose of equity to secure complete justice, the courts are able to adjust the remedies so as to grant the necessary relief, *Equal Employment Opportunity Commission v. General Tel. Co. of Northwest, Inc.*, 599 F.2d 322 (9th Cir. 1979), *affirmed*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), and a district court sitting in equity may even devise a remedy which extends or exceeds the terms of a prior agreement between the parties, if it is necessary to make the injured party whole. *Levitt Corp. v. Levitt*, 593 F.2d 463 (2nd Cir. 1979).

■ Since promissory estoppel is an equitable matter, the trial court has broad power in its choice of a remedy, and it is significant that the ancient maxim that "equity will not suffer a wrong to be without a remedy" has long been the law in the State of Indiana. *King v. City of Bloomington*, 239 Ind. 548, 159 N.E.2d 563 (Ind. 1959); *Ritter v. Ritter*, 219 Ind. 487, 38 N.E.2d 997 (Ind.1942); *Dodd v. Reese*, 216 Ind. 449, 24 N.E.2d 995 (Ind.1940); and *Department of Insurance v. Motors Insurance Corporation*, 236 Ind. 1, 138 N.E.2d 157 (Ind.1966).

■ In this case the promissory estoppel finding of the district court is not challenged. Moreover, it is apparent that the appellees suffered a loss of profits as a direct result of their reliance upon the promise made by appellant, and the amount

of the lost profits was ascertained with reasonable certainty.[1] In addition, appellees took reasonable steps to mitigate their damages, and an award of damages based upon lost profits was appropriate in order to do complete justice.

Under the circumstances, and concluding, as we do, that the findings of the district court are not clearly erroneous, we affirm the judgment which awards damages to appellees based upon lost profits.

AFFIRMED.

---

1. In *Goodman v. Dicker*, 169 F.2d 684 (D.C.Cir. 1948), relied upon by appellant, the court held that the true measure of damages in that equitable estoppel case was the loss in the sum of $1150 sustained by expenditures made in reliance on assurances given to the injured parties, and that the trial court had erred in *adding* the item of $350 for lost profits. No reasons were assigned or authorities cited by the court for the action it took, and there was no suggestion that in an appropriate case loss of profits could not be a true measure of damages. In any event, it is apparent that the award of double damages was rejected and the higher figure of $1150 was chosen in order to do complete justice. In this connection, it is interesting to note that in *National Savings and Trust Company v. Kahn*, 300 F.2d 910 (D.C.Cir. 1962), the same circuit commented that "(T)he cost of performance may be the proper measure of damages where plaintiff renders part performance *and it is impossible to estimate the profits he would have received but for defendant's breach.* (Citing authorities). That is not this case." (Emphasis supplied). *See id.* at 914 n. 7.